*Attorney Grievance Commission of Maryland v. Wendy Barrow Culberson*, AG No. 3, September Term, 2022, Opinion by Booth, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT**

Respondent Wendy Barrow Culberson violated the Maryland Attorneys' Rules of Professional Conduct 1.4 (Communication), 1.5(a) (Fees), 1.7 (Conflict of Interest—General Rule), 1.15(a) (Safekeeping Property), 8.1(a) (Bar Admissions and Disciplinary Matters), and 8.4(a)–(d) (Misconduct), and Maryland Rule 19-407(a)(2)–(4) (Attorney Trust Account Record-Keeping).

During a period spanning several years, Ms. Culberson misappropriated hundreds of thousands of dollars from her client by using her client's power of attorney to make cash withdrawals from bank accounts held for her client's benefit. Ms. Culberson failed to provide her client with any contemporaneous invoices, accounting, or other documentation that might reflect any legitimate use of the cash withdrawals. Ms. Culberson failed to maintain any client matter records or client ledgers. During Bar Counsel's investigation into this matter, Ms. Culberson made knowing and intentional misrepresentations of material facts to Bar Counsel and created inaccurate and false documentation in an effort to conceal her misappropriation.

The Supreme Court of Maryland concluded that disbarment is the appropriate sanction.

IN THE SUPREME COURT
OF MARYLAND*

AG No. 3

September Term, 2022

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

WENDY BARROW CULBERSON

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Opinion by Booth, J.

Filed:  March 27, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland.  The name change took effect on December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

The Attorney Grievance Commission of Maryland ("Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("the Petition") against Respondent, Wendy Barrow Culberson, a member of the Maryland Bar, arising out of her representation of Gabrielle Buck and Bar Counsel's subsequent investigation. The Commission alleged that Ms. Culberson violated the Maryland Attorneys' Rules of Professional Conduct ("MARPC")[1] 1.4 (Communication), 1.5(a) (Fees), 1.7 (Conflict of Interest—General Rule), 1.15(a) (Safekeeping Property), 8.1(a) (Bar Admissions and Disciplinary Matters), and 8.4(a)–(d) (Misconduct), and Maryland Rule 19-407(a)(2)–(4) (Attorney Trust Account Record-Keeping).[2]

The hearing judge assigned to this matter found by clear and convincing evidence that Ms. Culberson committed all of the violations alleged by the Commission. The hearing judge also determined the presence of eight aggravating factors and one mitigating factor. Bar Counsel recommends a sanction of disbarment. Ms. Culberson filed exceptions to a number of the hearing judge's findings of fact and to all of the hearing judge's conclusions of law. For the reasons set forth herein, we determine that the hearing judge's

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct, which employed the numbering format of the American Bar Association Model Rules, were renamed the MARPC and recodified without substantive modification in Title 19, Chapter 300 of the Maryland Rules. For ease of reference and comparison with our prior opinions and those of other courts, we will refer to the MARPC rules using the numbering of the model rules, as permitted by Rule 19-300.1(22).

[2] The Petition also charged Ms. Culberson with violating Rule 8.1(b), but Bar Counsel later withdrew that charge.

findings of fact were not clearly erroneous, concur with the hearing judge's conclusions of law, and impose a sanction of disbarment.

## I

## Procedural Background

The Commission filed the Petition on March 16, 2022. On June 30, Bar Counsel served interrogatories and a request for production of documents on Ms. Culberson's counsel. Ms. Culberson, through counsel, requested a ten-day extension, which Bar Counsel granted. Thereafter, Ms. Culberson's counsel withdrew from the case. On August 17, Bar Counsel sent Ms. Culberson an email advising her that her discovery responses were overdue and inquiring as to when Ms. Culberson intended to provide them. Having received no response, on August 29, Bar Counsel sent a follow-up email advising that if discovery responses were not provided by September 1, Bar Counsel would seek sanctions.

Ms. Culberson failed to respond to Bar Counsel's emails and failed to respond to the outstanding discovery. Bar Counsel filed a motion for sanctions on September 2. Ms. Culberson wrote to the hearing judge on September 23 and advised that she had not received the motion for sanctions. Thereafter, Bar Counsel filed a renewed motion for sanctions and a motion to shorten time, which were served on Ms. Culberson. In its motion to shorten time, Bar Counsel acknowledged that, due to an internal administrative error, Ms. Culberson had not been served with the initial motion. Ms. Culberson filed a response to the renewed motion for sanctions, stating that she had advised Bar Counsel "on

numerous occasions" that she "ha[d] no other information or documents to provide" and Bar Counsel therefore was "not prejudiced" by her failure to respond.

On October 7, the hearing judge granted Bar Counsel's motion and entered an order striking Ms. Culberson's answer to the Petition and prohibiting Ms. Culberson from calling witnesses, presenting records, or testifying on anything other than mitigation at the evidentiary hearing.[3] The hearing judge held an evidentiary hearing on October 19, 2022.

---

[3] Ms. Culberson excepts to the hearing judge's entry of the sanctions order. She argues that if Bar Counsel had properly served her with the first motion, the motion to shorten time would not have been necessary and the motion for sanctions "would not have [been] ripe to be ruled upon by the [hearing judge] prior to the expiration of the discovery deadline[.]" We overrule Ms. Culberson's exception. After Bar Counsel discovered that the motion had not been properly served, Bar Counsel promptly filed a renewed motion, which was properly served. Ms. Culberson filed a response to Bar Counsel's renewed motion for sanctions in which she admitted that she had no intention of complying with her discovery obligations under the Maryland Rules because "all information and documentation" was provided to Bar Counsel "long ago" in response to Bar Counsel's requests for documents and information in connection with its initial investigation. On October 7, 2022—four days after Ms. Culberson filed her response to the motion and two days after the discovery deadline—the hearing judge entered her order granting the motion for sanctions. Given Ms. Culberson's unwillingness to comply with her discovery obligations, the hearing judge did not abuse her discretion in entering the sanctions order. In overruling Ms. Culberson's exception, we point out that, unless a party files a motion for a protective order under Maryland Rule 2-403 that is granted by the court, there is nothing in the Maryland Rules that excuses a party from answering interrogatories in accordance with Maryland Rule 2-421, or from serving a written response to a request for production of documents under Maryland Rule 2-422.

As part of her exceptions, Ms. Culberson also asserts that Bar Counsel failed to properly answer discovery that she propounded. We overrule this exception. Other than Ms. Culberson's unsupported assertion in her exceptions, there is nothing in the record to reflect that she served discovery. Moreover, assuming she in fact propounded discovery under the Maryland Rules, she did not file a motion with the hearing judge asserting that Bar Counsel failed to respond to discovery requests and requesting any relief in connection therewith.

3

Ms. Culberson did not appear. The hearing judge admitted Bar Counsel's Exhibits 1-30.[4]

Bar Counsel called its investigator, Charles E. Miller, IV, CPA, who provided testimony concerning his review of Ms. Buck's bank records and the various withdrawals and transactions undertaken by Ms. Culberson in connection with her client's bank accounts over a span of several years. Bar Counsel submitted Proposed Findings of Fact and Conclusions of Law. Ms. Culberson filed a response to Bar Counsel's Proposed Findings of Fact and Conclusions of Law. Thereafter, the hearing judge issued Findings of Fact and Conclusions of Law.

Bar Counsel did not file any exceptions. As noted above, Ms. Culberson filed exceptions to the factual findings and legal conclusions rendered by the hearing judge. With this Court's permission, Ms. Culberson appeared remotely via Zoom at oral argument and presented her argument in support of her exceptions as well as her request that this Court not disbar her but instead impose an "alternative resolution."

---

Ms. Culberson also excepts to Bar Counsel's failure to provide her with the transcript from the evidentiary hearing until she requested it. She acknowledges that, when she requested the transcript, it was provided. Ms. Culberson's exception is overruled.

[4] Bar Counsel's exhibits included: a retainer agreement dated February 27, 2014 between Gabrielle Buck and Ms. Culberson; Ms. Buck's Power of Attorney dated March 24, 2016; emails between Ms. Buck and Ms. Culberson dated July 10, 2019; Ms. Buck's Complaint to Bar Counsel; correspondence between Bar Counsel and Ms. Culberson; legal invoices that were prepared by Ms. Culberson and provided to Bar Counsel but never delivered to Ms. Buck; records for PNC Bank accounts under Ms. Buck's control for the years 2014–2019; an affidavit of the PNC Bank records custodian attesting that the records were produced pursuant to a subpoena; charts prepared by Bar Counsel's investigator, Charles E. Miller, IV, CPA, summarizing the bank records; and the transcript of Ms. Culberson's statement under oath taken on November 30, 2020.

4

When no exception is made to a hearing judge's finding of fact, this Court may accept it as established. Maryland Rule 19-740(b)(2)(A). When a party excepts to a finding, we must determine whether the finding is established by the requisite standard of proof—in the case of an allegation of misconduct, clear and convincing evidence. Maryland Rules 19-740(b)(2)(B), 19-727(c). The standard of review where a party excepts to a hearing judge's factual findings is the clearly erroneous standard. *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016). A factual finding is not clearly erroneous "if there is any competent material evidence to support it." *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16 (2014) (cleaned up). We review a hearing judge's conclusions of law *de novo*. Maryland Rule 19-740(b)(1).

*Ms. Culberson's General Exceptions*

Ms. Culberson has filed "General Exceptions" to the hearing judge's Findings of Fact and Conclusions of Law in its entirety, except for a few pages of the findings. Because of the general nature of these exceptions, which permeate nearly all the factual findings and legal conclusions, it is appropriate to address them at the outset.

First, Ms. Culberson argues that it was inappropriate for the hearing judge to adopt, in large part, Bar Counsel's Proposed Findings of Fact and Conclusions of Law that were submitted after the evidentiary hearing. Relatedly, Ms. Culberson asserts that there is nothing to suggest that the hearing judge conducted "an independent review" of the 30 exhibits that were entered into evidence.

Second, Ms. Culberson excepts to the findings of fact because she contends that there was no "substantive evidence or direct evidence" from her client, Ms. Buck. Ms.

5

Culberson appears to suggest that Bar Counsel could not satisfy its burden of proving the alleged misconduct by clear and convincing evidence without calling Ms. Buck as a witness.

Third, Ms. Culberson excepts to the fact that the hearing judge "totally disregard[ed]" information provided by her to refute the allegations.

We overrule these general exceptions for the following reasons. First, based upon our independent review of the record, the hearing judge correctly concluded that Bar Counsel met its burden of establishing Culberson's misconduct by clear and convincing evidence. Ms. Buck's testimony was not required to prove the misconduct alleged in this case. Indeed, in many instances, the exhibits establishing the misconduct are Ms. Culberson's own statement under oath and her written correspondence to Bar Counsel. As we have often repeated, "'the hearing judge is entitled to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact.'" *Attorney Grievance Comm'n v. Kane*, 465 Md. 667, 676 n.4 (2019) (quoting *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50 (2006)). Second, Ms. Culberson's exceptions recite many facts and conclusions that are not contained in the record. Ms. Culberson essentially asks this Court to accept her version of the facts that are not part of the record (due to her failure to comply with her discovery obligations and her failure to appear at the evidentiary hearing). Third, there is nothing inappropriate about a hearing judge's decision to adopt a party's proposed findings of fact or conclusions of law where they are supported by the record.

We summarize below the hearing judge's findings of fact and other undisputed matters in the record as they pertain to the alleged violations. To the extent that they have not already been overruled, we also address any additional exceptions in relation to the findings to which they pertain.

## II

## Findings of Fact

Ms. Culberson was admitted to the Maryland bar in 1994. Between 1995 and 2020, Ms. Culberson was a solo practitioner who focused primarily on family law. She maintained an office for the practice of law in Cecil County. She closed her law practice in September 2020.

*Representation of Gabrielle Buck*

Ms. Culberson represented Gabrielle Buck in her divorce proceeding in 2013. Following that representation, Ms. Culberson became Ms. Buck's family attorney, and they became close personal friends.

Ms. Buck lives on an approximately 800-acre farm called Mt. Ararat Farm in Port Deposit, Maryland with her two adult sons. She is the beneficiary of two family trusts (collectively, "the DB Trusts") that, as of September 2014, were valued at $23 million. Raymond James Financial and Esther Streete are the co-trustees of the DB Trusts. In addition, Ms. Buck is the sole trustee of the Gabrielle Brown Buck Revocable Living Trust ("the GBB Trust"), which she created in June 2015.

During the period in question, the GBB Trust received a monthly distribution in the amount of $38,000 from one of the family trusts, which Ms. Buck used to cover personal

expenses and the costs of operating the farm. Each month, the distribution was transmitted to a PNC Bank checking account ("the GBB Account"), and thereafter approximately $8,000 to $10,000 was transferred from the GBB Account to another PNC bank account ("the Farm Account"), which was used to subsidize Mt. Ararat farming operations.

In February 2014, Ms. Buck executed an agreement with Ms. Culberson, in which Ms. Culberson agreed to help manage Ms. Buck's business and farm interests ("the Retainer Agreement"). Under the Retainer Agreement, Ms. Buck retained Ms. Culberson to manage her "business and farm related matters or for any other matters that [Ms. Buck] may request [Ms. Culberson's] involvement except for matters which involve legal services (court proceedings; lawsuits; appeals; etc.)." Ms. Buck agreed to pay Ms. Culberson a monthly flat fee of $3,500, and any additional legal matters would be billed at a rate of $200/hour. The Retainer Agreement specifically stated that "no legal services, other than those directly related to the matters(s) referred to herein, will be rendered to [Ms. Buck] unless and until a separate written contract of employment is entered[.]" The Retainer Agreement also stated that Ms. Culberson would "render a full and final accounting of all sums paid to [Ms. Culberson] in connection with" the services provided under the Agreement.

Under the monthly flat fee arrangement established by the Retainer Agreement, Ms. Culberson managed Ms. Buck's interests in the family trusts and other personal and business interests that arose, including serving as a liaison between Ms. Buck and the trustees of the DB Trusts. In her statement under oath, Ms. Culberson testified that she communicated more effectively than Ms. Buck with the trustees of the DB Trusts, thereby

8

ensuring that Ms. Buck received her requested discretionary distributions from those trusts. Ms. Culberson's additional responsibilities included paying various bills, "getting the EzPass account straightened out," and "working with the bookkeeper for the farm including transferring money to the farm account." The hearing judge concluded that all such services were non-legal in nature and were covered by the monthly flat fee in the amount of $3,500.

Between February 2014 and April 2016, Ms. Buck wrote checks from the GBB Account to Ms. Culberson for the monthly $3,500 flat fee. Ms. Culberson considered the $3,500 monthly fee earned upon receipt and deposited the funds into her personal account. During this period, Ms. Buck occasionally wrote checks to Ms. Culberson in excess of the monthly $3,500 flat fee. Ms. Buck paid Ms. Culberson $66,000 in 2014, and $45,216 in 2015, for both legal and non-legal services provided under the Retainer Agreement.

In March 2016, Ms. Buck executed a power of attorney naming Ms. Culberson as her agent and giving her access to both the GBB Account and the Farm Account. According to Ms. Culberson, she advised Ms. Buck to give her a power of attorney because Ms. Culberson "got tired of chasing [Ms. Buck] down" to receive funds to pay bills.

Almost immediately after Ms. Buck appointed Ms. Culberson as her agent, Ms. Culberson began making cash withdrawals from the GBB Account. Between April 2016 and July 2019, Ms. Culberson made 323 cash withdrawals from the GBB Account totaling $940,297. Of the amounts withdrawn, Ms. Culberson deposited $342,500 into the Farm Account to subsidize farm expenses. On occasion, Ms. Culberson would withdraw cash from the GBB Account, deposit a portion of the funds withdrawn into the Farm Account,

9

and retain a portion of the funds.[5]  Ms. Culberson was unable to account for the remaining $597,797 that was not deposited into the Farm Account.

Assuming that Ms. Culberson was entitled to a monthly flat fee of $3,500 pursuant to the Retainer Agreement, the hearing judge found that Ms. Culberson would have charged and collected $133,000 between May 2016 and June 2019.  During the representation, Ms. Culberson failed to provide Ms. Buck with any time records or billing invoices to substantiate any legal services provided or additional fees incurred in excess of $133,000.  Ms. Culberson never provided Ms. Buck with any accounting of the funds that she withdrew from the GBB Account using the Power of Attorney.  When Ms. Buck occasionally questioned Ms. Culberson regarding the cash withdrawals from the GBB Account, Ms. Culberson advised her that the withdrawals were used to pay farm bills, insurance, or other expenses.  The hearing judge found that Ms. Culberson failed to advise Ms. Buck that Ms. Culberson retained the majority of the cash withdrawals for her own personal use and benefit.

In June 2019, Ms. Buck became frustrated with Ms. Culberson's representation, in part because Ms. Culberson had failed to provide her with invoices and estimates from contractors hired to perform repair work on the farm.  Ms. Buck, with the help of her financial advisor, accessed her GBB Account online and discovered Ms. Culberson's cash withdrawals.  Ms. Buck terminated Ms. Culberson's services in July 2019.  Ms. Buck sent

---

[5] For example, the hearing judge found that, on December 1, 2016, Ms. Culberson withdrew $12,500 in cash, deposited $10,000 into the Farm Account, and retained $2,500 for herself.

Ms. Culberson an email on July 10 requesting that Ms. Culberson provide documentation supporting her cash withdrawals, including "detailed invoices of [her] legal bills and other services [] provided." Ms. Culberson assured Ms. Buck that she would provide "a full accounting" of withdrawals from the GBB Account.

Between late July and early August 2019, Ms. Culberson provided Ms. Buck with numerous boxes of documents. On August 12, 2019, for the first time, Ms. Culberson provided Ms. Buck with "fee statements" purportedly for legal work performed between January 2016 and August 2019. Ms. Culberson later provided Bar Counsel with invoices summarizing the same information. The invoices totaled $293,014.24. They included hourly charges for non-legal services that, pursuant to the Retainer Agreement, were to be provided as part of the $3,500 monthly flat fee.[6] Ms. Culberson never provided Ms. Buck with an accounting of the cash withdrawals from the GBB Account and failed to provide any accounting showing how the invoices for attorney's fees were paid.

*Bar Counsel Investigation*

In December 2019, Ms. Buck, through counsel, filed a complaint with Bar Counsel, alleging that Ms. Culberson misappropriated funds and failed to account for $594,247 that she withdrew from the GBB Account. By letter dated February 12, 2020, Bar Counsel forwarded the complaint to Ms. Culberson and requested a response. Ms. Culberson

---

[6] For example, Ms. Culberson charged Ms. Buck her hourly rate for communicating with the co-trustees of the DB Trusts regarding Ms. Buck's finances and preparing budgets for the trustees. She also charged Ms. Buck her hourly rate for resolving issues surrounding Ms. Buck's E-ZPass account, which was a service Ms. Culberson explicitly acknowledged was provided under the monthly flat fee.

11

responded in a letter dated March 2, 2020, in which she stated that: (1) in December 2015, Ms. Culberson and Ms. Buck agreed to increase Ms. Culberson's monthly flat fee from $3,500 to $5,000; and (2) that Ms. Buck told Ms. Culberson not to send her periodic invoices. The hearing judge determined that these statements were knowing and intentional misrepresentations to Bar Counsel, finding that Ms. Buck never agreed to increase the monthly flat fee, and never advised Ms. Culberson not to send her invoices.[7]

Ms. Culberson also provided Bar Counsel with copies of various spreadsheets purporting to account for the funds that she withdrew from the GBB Account between 2016 and 2019. Ms. Culberson's spreadsheets purported to account for: the funds she withdrew and transferred to the Farm Account; the funds she withdrew to pay her fees; and the funds she withdrew to provide cash to Ms. Buck. The hearing judge found that the spreadsheets were never provided to Ms. Buck. The hearing judge also determined that, in many

---

[7] In finding that Ms. Culberson's statements to Bar Counsel were knowing and intentional misrepresentations, the hearing judge relied upon Ms. Buck's complaint to Bar Counsel, as well as the following additional exhibits:

•A budget Ms. Culberson prepared for Ms. Buck on March 29, 2019, indicating that the flat fee was $3,500 per month.

•An email that Ms. Culberson sent to one of the trustees of the DB Trusts on April 16, 2019, in which she explained the following with respect to the fees paid to her:

The legal expenses are two separate things. The $3,500.00 is the monthly amount [Ms. Buck] pays me for management of everything I do (which covers many, many things (basically 24/7) but does not include specific legal work). The $3,000 covers actual legal fees which includes legal work such as current pending litigation against Cecil County regarding a zoning violation issue and other ongoing legal matters.

12

instances, Ms. Culberson's spreadsheets did not match the GBB Account records that were provided by the bank pursuant to a subpoena. The hearing judge determined that Ms. Culberson's spreadsheets did not include cash withdrawals totaling $50,005, contained numerous errors and intentional misrepresentations, and were created after the fact by Ms. Culberson in an attempt to conceal her misappropriation of funds. The hearing judge also observed that, when Ms. Culberson was questioned during her statement under oath about the discrepancies between her spreadsheets and the PNC Bank records, she was unable to explain why numerous cash withdrawals were not listed on her spreadsheet, nor was she able to account for other discrepancies and errors.[8] Ms. Culberson testified that she withdrew funds from the GBB Account "however [she] wanted to do it" and did so "as she needed or wanted."

By letter dated July 16, 2020, Bar Counsel requested that Ms. Culberson provide the bank account information where she deposited fees associated with her representation of Ms. Buck. Bar Counsel also requested her client matter records and client ledger maintained on behalf of Ms. Buck. By letter dated August 10, 2020, Ms. Culberson, through counsel, told Bar Counsel that she no longer had client matter records and a client ledger maintained on behalf of Ms. Buck because her assistant's computer crashed. Ms.

---

[8] By way of some examples, Ms. Culberson's spreadsheets did not reflect checks written to her by Ms. Buck in 2016 totaling $6,500. In other instances, Ms. Culberson's spreadsheets reflect that she withdrew funds but do not reflect the accurate amount withdrawn. For instance, on October 31, 2016, the bank records reflect that Ms. Culberson withdrew $6,823, but her spreadsheet only reflects that she withdrew $2,400. Nor do the cash withdrawals from the GBB Account correlate with the $3,500 monthly flat fee or the purported monthly fees reflected on Ms. Culberson's invoices.

13

Culberson also stated that she "accounted for every dollar that was withdrawn from Ms. Buck's" GBB Account. The hearing judge also found that, in a letter dated December 10, 2020, Ms. Culberson provided unsubstantiated explanations for why at least 26 cash withdrawal transactions were not accounted for on her spreadsheets. She told Bar Counsel that 15 of the cash withdrawal transactions, totaling $26,700, were funds taken by Ms. Culberson as fees but mistakenly not accounted for. Ms. Culberson could not account for four cash withdrawals totaling $14,250.

Bar Counsel subpoenaed Ms. Culberson's attorney trust account records for the period between July 2018 through July 2019. Bar Counsel sent Ms. Culberson a letter in February 2021 requesting that she provide copies of her client matter records and client ledger records associated with her attorney trust account as required by Maryland Rule 19-407(a)(3). Ms. Culberson followed up with a letter stating that she did not have client matter records or client ledgers associated with her attorney trust account, and as a result, failed to provide them.

## III

### Violations of the Rules of Professional Conduct

Based upon the record and the above-summarized findings of fact, the hearing judge concluded, by clear and convincing evidence, that Ms. Culberson violated MARPC 1.4 (Communication), 1.5(a) (Fees), 1.7 (Conflict of Interest—General Rule), 1.15(a) (Safekeeping Property), 8.1(a) (Bar Admissions and Disciplinary Matters), and 8.4(a)–(d) (Misconduct), and Maryland Rule 19-407(a)(2)–(4) (Attorney Trust Account Record-Keeping). Ms. Culberson filed specific exceptions to all of the conclusions of law

14

with the exception of the violations of MARPC 1.15 and Maryland Rule 19-407. Bar Counsel did not except to any of the hearing judge's findings. Based upon our *de novo* review, we agree with the hearing judge's conclusions of law and overrule Ms. Culberson's exceptions.

*Failure to Communicate (Rule 1.4)*

Rule 1.4(a)(2) and (3) provide that "[a]n attorney shall . . . keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information[.]" Additionally, Rule 1.4(b) provides that "[a]n attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The hearing judge found that Ms. Culberson violated Rule 1.4(a) and (b) when she failed to: (1) provide Ms. Buck with information about the fees and expenses that she claimed were charged and collected, thereby depriving Ms. Buck of the ability to make informed decisions about her personal, business, and legal affairs; (2) provide Ms. Buck with billing invoices between April 2016 and June 2019, which deprived Ms. Buck of the ability to confirm or refute whether the legal services charged were actually provided or appropriate under the terms of the Retainer Agreement; (3) provide Ms. Buck with any accounting of the withdrawn funds, either during the course of her representation of Ms. Buck or after her services were terminated, despite Ms. Buck's request for an accounting; and (4) advise Ms. Buck that Ms. Culberson retained the majority of the cash withdrawals from the GBB Account for her own personal use and benefit.

15

Ms. Culberson excepts to the hearing judge's conclusion that she violated Rule 1.4, arguing that Bar Counsel introduced no evidence of communications between Ms. Culberson and Ms. Buck that would support a finding of a violation of this rule. We overrule this exception. In her statement under oath, Ms. Culberson admitted that she never provided any invoices between April 2016 and July 2019. The subpoenaed bank records also clearly reflect cash withdrawals made by Ms. Culberson. Bar Counsel's investigator, Charles E. Miller, IV, CPA, testified, based upon his review of the bank records, concerning the errors, discrepancies, and unaccounted funds in Ms. Culberson's invoices for services that were provided sometime after Ms. Buck terminated Ms. Culberson's representation. Mr. Miller's summary charts identifying the various withdrawals and discrepancies were admitted into evidence. Emails exchanged between Ms. Buck and Ms. Culberson in July 2019 reflect that Ms. Buck requested "any accounting of the withdrawals every month from my checking account." No accounting was forthcoming. Bar Counsel established a violation of Rule 1.4 by clear and convincing evidence.

*Charging Unreasonable Fees (Rule 1.5(a))*

Rule 1.5(a) states:

(a)    An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

16

  (3)  the fee customarily charged in the locality for similar legal services;

  (4)  the amount involved and the results obtained;

  (5)  the time limitations imposed by the client or by the circumstances;

  (6)  the nature and length of the professional relationship with the client;

  (7)  the experience, reputation, and ability of the attorney or attorneys performing the services; and

  (8)  whether the fee is fixed or contingent.

The hearing judge concluded that Ms. Culberson charged and collected unreasonable fees in connection with her representation of Ms. Buck in violation of Rule 1.5(a). Ms. Culberson excepts to the conclusion that she violated Rule 1.5, asserting that there was no evidence before the hearing judge that the fees charged to Ms. Buck were unreasonable. We overrule this exception.

We agree with the hearing judge's conclusion that Ms. Culberson violated this rule by withdrawing hourly fees from the GBB Account for services covered under the monthly flat fee established by the Retainer Agreement, such as resolving issues in connection with Ms. Buck's E-ZPass account and communicating with the trustees of the DB Trusts concerning Ms. Buck's finances. We also agree with the hearing judge's conclusion that Ms. Culberson violated Rule 1.5 by failing to bill Ms. Buck in the manner required by the Retainer Agreement. The Retainer Agreement provided that "any and all services unrelated to [the management of business and farm related activities] will be billed to [Ms. Buck] separately at [Ms. Culberson's] standard hourly rate, over and beyond" the $3,500 monthly flat fee. The Retainer Agreement also stated that "[p]ayment of any bill is due on receipt of the bill." We agree with the hearing judge's conclusion that Ms. Culberson's

17

failure to provide regular billing invoices to Ms. Buck between 2016 and 2019 was inconsistent with the express terms of the Retainer Agreement and constituted a violation of Rule 1.5. *See Attorney Grievance Comm'n v. Rand*, 445 Md. 581, 629 (2015) (failure to provide invoices as agreed upon in the attorney's fee agreement violated Rule 1.5); *Attorney Grievance Comm'n v. Green*, 441 Md. 80, 91–92 (2014) (failure to provide invoices as agreed upon in the attorney's retainer agreement violated Rules 1.4(a) and 1.5(a)).

*Acting with a Prohibited Conflict of Interest (Rule 1.7)*

Rule 1.7(a) states, in pertinent part, that "an attorney shall not represent a client if the representation involves a conflict of interest." A conflict of interest exists where "there is a significant risk that the representation" of a client "will be materially limited by . . . a personal interest of the attorney." Rule 1.7(a)(2). Comment [1] to Rule 1.7 provides: "Loyalty and independent judgment are essential elements in the attorney's relationship to a client. Conflicts of interest can arise from the attorney's responsibilities to another client[] . . . or from the attorney's own interests."

Ms. Culberson excepts to this conclusion because she claims that there was "no evidence" of the relationship between Ms. Buck and Ms. Culberson. We overrule this exception. The record in this case includes Ms. Buck's Power of Attorney, which Ms. Culberson used to make cash withdrawals from her client's bank account for her personal use and benefit. The Power of Attorney clearly established a fiduciary relationship between Ms. Buck, as the principal, and Ms. Culberson, as her agent. We agree with the hearing judge's conclusion that Ms. Culberson violated Rule 1.7 when she engaged in self-

18

dealing as it relates to the unreasonable fees charged to Ms. Buck, and fees she paid herself in her role as Ms. Buck's agent or attorney, without providing any accounting, oversight, or authorization. *See Attorney Grievance Comm'n v. Robbins*, 463 Md. 411, 460–61 (2019) (finding a violation of Rule 1.7 where an attorney, in his role as trustee, paid himself from the trust without providing appropriate billing statements or accounting, despite repeated requests for information about his charges); *see also Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 193 (2014) (concluding that an attorney, acting as trustee, violated Rule 1.7 when he engaged in self-dealing that had an adverse impact on his duty of loyalty to the client and the trust). Ms. Culberson's use of her client's power of attorney to make cash withdrawals in excess of one-half of a million dollars over a several year period, unaccompanied by any contemporaneous explanation, accounting, or invoicing, constitutes a clear and unequivocal violation of Rule 1.7.

*Failing to Safekeep Property (Rule 1.15(a))*

Rule 1.15(a) states:

An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

We agree with the hearing judge's conclusion that Ms. Culberson violated Rule 1.15(a) by misappropriating funds from Ms. Buck's GBB Account for her own personal

19

use and benefit. As we previously observed, misappropriation is "any unauthorized use by an attorney of a client's funds entrusted to him or her, whether or not temporary or for personal gain or benefit." *Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 129–30 (2012) (cleaned up) (concluding that the attorney misappropriated his clients' settlement funds when he comingled client and personal funds and did not provide financial records to establish how the funds were spent). The record in this case is clear that Ms. Culberson failed to safekeep Ms. Buck's property by: using her client's power of attorney to make cash withdrawals from Ms. Buck's GBB Account for a period spanning several years; failing to provide any billing invoices that would reflect any appropriate or legitimate use of the funds; and failing to keep any record or accounting of the funds she withdrew from the GBB Account while acting as her client's agent. In sum, Ms. Culberson's cash withdrawals under the circumstances constituted misappropriation of her client's funds and an egregious violation of Rule 1.15.

*Attorney Trust Account Record-Keeping (Md. Rule 19-407)*

"Rule 19-407[9] sets forth the requirements by which all attorneys must abide in connection with trust-account record keeping." *Attorney Grievance Comm'n v. Silbiger*, 478 Md. 607, 631 (2022). These requirements include

> the creation and maintenance of detailed records of all deposits and disbursements of client funds and funds held on behalf of third persons,

---

[9] Rule 19-407(a) states in relevant part:

(a)  **Creation of Records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

20

records required for each client matter in which the attorney receives funds in trust, a monthly reconciliation of attorney trust account records, client matter records, funds of the attorney held in the trust account, and record retention requirements.

* * *

(2)  *Deposits and Disbursements*.  A record for each account that chronologically shows all deposits and disbursements, as follows:
    (A)  for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
    (B)  for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
    (C)  for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

(3)  *Client Matter Records*.  A record for each client matter in which the attorney receives funds in trust, as follows:
    (A)  for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and
    (B)  an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(4)  *Record of Funds of the Attorney*.  A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 19-408(b).

*Id.* at 631.  We agree with the hearing judge's conclusion that Ms. Culberson violated Rule 19-407(a)(2)–(4).  In a letter from Ms. Culberson's counsel to Bar Counsel, she admitted that she did not have client matter records or client ledgers associated with her attorney trust account.

*General Misconduct (Rule 8.4)*

Rule 8.4(a) provides that an attorney commits professional misconduct if the attorney "violate[s] or attempt[s] to violate the [MARPC], knowingly assist[s] or induce[s] another to do so, or do so through the acts of another."  As a result of Ms. Culberson's violations of other disciplinary rules, the hearing judge found, and we agree, that she violated Rule 8.4(a).

Under Rule 8.4(b), it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects[.]" Ms. Culberson excepts to this conclusion because Ms. Buck has not filed criminal charges against her and asserts that the record in this case contains no evidence that she violated a criminal statute.  We overrule her exception.

As we have observed on several occasions, "[an] attorney may be disciplined for acts which are criminal but do not result in a criminal conviction if Bar Counsel proves the underlying conduct at the disciplinary proceeding."  *Silbiger*, 478 Md. at 629 (quoting *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 395 (1997)); *see also Attorney Grievance Comm'n v. Yates*, 467 Md. 287, 301 (2020) (stating that "it is not a prerequisite to a finding of a violation of Rule 8.4(b) that the attorney have been charged with, or convicted of, a violation of [a] criminal statute").  "To establish a violation of Rule 8.4(b),

22

there need only be clear and convincing evidence of a criminal act." *Yates*, 467 Md. at 301; *see also Attorney Grievance Comm'n v. Collins*, 477 Md. 482, 508 (2022) (stating that "to establish a violation of MARPC 8.4(b), Bar Counsel must prove two elements by clear and convincing evidence: (1) the attorney committed a criminal act; and (2) that criminal act reflects adversely on the attorney's honesty, trustworthiness or fitness as a lawyer in other respects") (cleaned up).

The hearing judge concluded that Ms. Culberson violated Rule 8.4(b) because Bar Counsel presented clear and convincing evidence that she violated the elements of Md. Code, Criminal Law Article ("CL") § 7-113, which states:

(a)     A fiduciary may not:

(1)     Fraudulently and willfully appropriate money or a thing of value that the fiduciary holds in a fiduciary capacity contrary to the requirements of the fiduciary's trust responsibility; or

(2)     Secrete money or a thing of value that the fiduciary holds in a fiduciary capacity with a fraudulent intent to use the money or thing of value contrary to the requirements of the fiduciary's trust responsibility.

The hearing judge concluded that Ms. Culberson used her client's Power of Attorney to "misappropriate[] funds from the [GBB] Account for her own personal use and benefit." Based upon our review of the record, it is evident that the elements of fraudulent and willful misappropriation by Ms. Culberson in her fiduciary capacity were established by clear and convincing evidence. There is overwhelming evidence in this record that Ms. Culberson used her client's Power of Attorney to access her client's bank account to make numerous cash withdrawals for her own personal benefit. Ms. Culberson admitted that she provided no contemporaneous invoices to her client that might have provided

23

documentation to support her contention that the funds were used for Ms. Buck's benefit. To say that misappropriation of a client's funds "reflects adversely on the attorney's honesty, trustworthiness or fitness" is an understatement and constitutes an obvious violation of Rule 8.4(b).

Under Rule 8.4(c), it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The hearing judge found that Ms. Culberson violated Rule 8.4(c) by: (1) withdrawing funds from the GBB Account that she could not account for or substantiate as being for a legitimate expense related to Ms. Buck; (2) providing Ms. Buck with false and misleading billing invoices in an attempt to justify and conceal her misappropriation; and (3) by charging her hourly rates on the billing invoices that were for services provided under the $3,500 monthly flat fee agreement. We have consistently determined that an attorney's intentional misappropriation of client funds violates Rule 8.4(c). *See Silbiger*, 478 Md. at 629–30; *Attorney Grievance Comm'n v. Karambelas*, 473 Md. 134, 167 (2021); *Goodman*, 426 Md. at 129–30. The hearing judge also concluded that the misrepresentations made by Ms. Culberson to Bar Counsel that form the basis for a violation of Rule 8.1(a) (discussed *infra*) also constitute a violation of Rule 8.4(c). For the same reasons that we conclude that Ms. Culberson violated Rule 8.1(a), we similarly conclude that she violated Rule 8.4(c).

Under Rule 8.4(d), it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice[.]" The hearing judge found that Ms. Culberson violated Rule 8.4(d) when she misappropriated Ms. Buck's funds. As noted above, Ms. Culberson's use of her client's Power of Attorney to make cash withdrawals from her

24

client's bank account with no contemporaneous explanation or documentation that might have otherwise reflected an appropriate use of the funds for her client's benefit, is clearly conduct that "negatively impacts the public's perception of the legal profession[.]" *Karambelas*, 473 Md. at 169. We agree with the hearing judge's assessment that Ms. Culberson's conduct was prejudicial to the administration of justice in violation of Rule 8.4(d).

*Impeding Bar Counsel's Investigation (Rule 8.1(a))*

Rule 8.1(a) states that "[a]n applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]"

The hearing judge found that Ms. Culberson violated Rule 8.1(a) "on multiple occasions." First, she knowingly and intentionally misrepresented that Ms. Buck had agreed to increase the retainer amount to $5,000 per month. Second, she "knowingly and intentionally misrepresented to Bar Counsel that Ms. Buck instructed her not to send invoices." Third, she "knowingly and intentionally misrepresented that she no longer had client matter records or client ledgers maintained on behalf of Ms. Buck because her assistant's computer crashed."[10] Lastly, Ms. Culberson violated Rule 8.1(a) when she provided Bar Counsel with spreadsheets "that falsely claimed to account for the totality of funds [Ms. Culberson] withdrew" from the GBB Account.

---

[10] To support her finding, the hearing judge pointed out that, during Ms. Culberson's statement under oath, she testified that the spreadsheets provided to Bar Counsel were the only records she had created and maintained that reflected the payments that she withdrew from the GBB Account.

25

Ms. Culberson excepts to this legal conclusion, asserting that there was "no evidence" of knowing and intentional misrepresentations because no one with "personal knowledge of the communications" between Ms. Culberson and Ms. Buck testified at the hearing. We overrule Ms. Culberson's exception. For the reasons discussed in part II of this opinion, there was clear and convincing evidence in the record to support the hearing judge's factual findings that Ms. Culberson made knowing and intentional material misrepresentations to Bar Counsel. We agree with the hearing judge's conclusion that Ms. Culberson knowingly made false statements of material fact to Bar Counsel in violation of Rule 8.1(a).

**IV**

**Sanction**

As we have often stated, the purpose of attorney discipline proceedings is not to punish the attorney but to protect the public and deter other lawyers from engaging in misconduct. *Attorney Grievance Comm'n v. Yi*, 470 Md. 464, 499 (2020) (citing *Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 497–98 (2017)). The public is protected when sanctions are "commensurate with the nature and gravity of the violations and the intent with which they were committed[.]" *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 198 (2015) (quotations omitted). To determine the appropriate sanction in attorney disciplinary proceedings, we consider the facts of the particular case, as well as the presence of any aggravating and mitigating factors.

26

*Aggravating Factors*

Aggravating factors are factors that "'militate in favor of a more severe sanction.'" *Attorney Grievance Comm'n v. Bonner*, 477 Md. 576, 608 (2022) (quoting *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 233 (2020)). When fashioning a sanction, we consult the aggravating factors articulated in Standard 9.22 of the American Bar Association ("ABA") Standards for Imposing Sanctions. *See Bonner*, 477 Md. at 608; *see also Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (outlining the list of recognized factors). In this case, the hearing judge found that Bar Counsel had proven the existence of eight aggravating factors: (1) a dishonest or selfish motive; (2) a pattern of misconduct; (3) bad faith obstruction of the disciplinary proceeding; (4) submission of false evidence and false statements during the disciplinary process; (5) refusal to acknowledge the wrongful nature of her conduct; (6) substantial experience in the practice of law; (7) indifference to making restitution; and (8) illegal conduct.

The hearing judge determined that Ms. Culberson demonstrated a dishonest and selfish motive when she misappropriated Ms. Buck's funds for her own use and benefit between 2016 and 2019. The misappropriation of funds over the course of several years demonstrates a pattern of misconduct. The hearing judge found that Ms. Culberson made knowing and intentional false statements to Bar Counsel during the disciplinary process and submitted numerous false documents in an effort to conceal the misappropriation. The hearing judge further determined that Ms. Culberson engaged in bad faith obstruction of the disciplinary proceeding by failing to participate in the proceedings before the court, including failing to respond to discovery and failing to appear for trial. "'This Court has

27

found bad faith obstruction when attorneys knowingly fail[] to respond to Bar Counsel's requests for documents, attend evidentiary hearings, submit written responses, or otherwise fail to comply with the rules or directives of the [Commission].'" *Attorney Grievance Comm'n v. Young*, 473 Md. 94, 129 (2021) (quoting *Attorney Grievance Comm'n v. McLaughlin*, 456 Md. 172, 204 (2017)).

The hearing judge further determined that Ms. Culberson refused to acknowledge the wrongful nature of her misconduct, insisting that she could "account for every dollar" withdrawn from Ms. Buck's GBB Account. In addition to failing to provide Ms. Buck with any accounting of the cash withdrawals from the GBB Account or an explanation for how her invoices for attorney's fees were paid, the hearing judge found that Ms. Culberson failed to provide a refund to Ms. Buck of any misappropriated funds. Having been admitted to the Maryland Bar since 1994, the hearing judge determined that Ms. Culberson had substantial experience in the law. Finally, the hearing judge found that Ms. Culberson's misappropriation of funds through the use of her client's Power of Attorney constituted illegal conduct. We conclude that there is clear and convincing evidence in the record to support the hearing judge's findings on all eight factors, for the reasons articulated by the hearing judge.

*Mitigating Factors*

"In attorney grievance proceedings, this Court considers several mitigating factors based upon ABA Standard 9.32." *Bonner*, 477 Md. at 609 & n.17 (quoting *Sperling*, 459 Md. at 277–78 (listing the recognized mitigating factors)). In this case, Ms. Culberson did not participate in the evidentiary proceeding and therefore did not testify regarding any

28

alleged mitigation, despite being permitted by the hearing judge to present such evidence. Bar Counsel represented to the hearing judge that Ms. Culberson had no prior disciplinary complaints. Based upon Bar Counsel's representation, the hearing judge found the presence of one mitigating factor: the absence of a prior disciplinary record.

Although Ms. Culberson did not participate in the evidentiary hearing, she submitted a written response to Bar Counsel's Proposed Findings of Fact and Conclusions of Law in which she argued that the record supported the presence of the following additional mitigating factors: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems; (3) timely good faith efforts to make restitution or to rectify consequences of misconduct; (4) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (5) character or reputation; (6) delay in the disciplinary proceedings; and (7) imposition of other penalties or sanctions.

After summarizing in detail Ms. Culberson's recitals contained in her written response and the arguments made in support of these mitigating factors, the hearing judge determined that Ms. Culberson failed to prove any of the mitigating factors by a preponderance of the evidence. In making this finding, the hearing judge pointed out that Ms. Culberson: (1) deliberately failed to cooperate with Bar Counsel in this proceeding, which resulted in the sanctions order limiting her participation in this case; and (2) failed to attend the evidentiary hearing, and did not request to participate remotely pursuant to Maryland Rule 2-800, *et seq*. Based upon her complete lack of participation in the proceeding, the hearing judge pointed out that the court did not receive any evidence to

29

support Ms. Culberson's written arguments on mitigation and was also unable to assess Ms. Culberson's credibility.

We agree with the hearing judge's conclusions that Ms. Culberson failed to present any evidence on mitigating factors for the reasons expressed by the hearing judge. When an attorney fails to participate in the disciplinary proceeding, this Court will not accept the attorney's arguments concerning mitigation as a substitute for the requirement that mitigation evidence be presented to the hearing judge and established by a preponderance of the evidence.

*Disbarment is the Appropriate Sanction*

Bar Counsel recommends that Ms. Culberson be disbarred from the practice of law. Ms. Culberson requests that, in lieu of disbarment, the Court impose a sanction less severe than disbarment because she "has not practiced law in over two years and has made it clear she has no intention to practice or seek to practice law again[.]"

Under our well-established case law, "when an attorney engages in knowing and intentional conduct that involves the misappropriation of funds, disbarment is warranted." *Silbiger*, 478 Md. at 634–35. We recently observed that this Court has "not imposed a sanction less than disbarment" when an attorney has engaged in theft or misappropriation of funds. *Id.* at 643. An attorney who misappropriates funds entrusted to her by her client for her own benefit without the client's knowledge or consent "violate[s] one of the most sacred obligations of an attorney[.]" *Id.* at 644. "It has been our long-held and consistent position that the entrustment to attorneys of the money and property of others involves a responsibility of the highest order" and that "appropriating any part of their funds to their

30

own use and benefit without clear authority to do so cannot be tolerated." *Attorney Grievance Comm'n v. Jones*, 428 Md. 457, 469 (2012) (cleaned up).

We are not persuaded to deviate from our sanction jurisprudence based upon Ms. Culberson's representation to this Court that she has no intention of practicing law in the future. Nor does the presence of one mitigating factor overcome her many transgressions along with several aggravating factors. The only sanction appropriate for Ms. Culberson's conduct is disbarment.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WENDY BARROW CULBERSON.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/3a22agcn.pdf